**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1611
_____

KUMAR CHANDANA PERERA;
LAKSHIKA KRISHANTHI JAYASURIYA;
SEMALI DULYANA PERERA,
                                                 Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                 Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-009-080, A089-009-081, and A089-009-082)
Immigration Judge:  Honorable Susan Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 11, 2013
Before:  VANASKIE, SCIRICA and COWEN, Circuit Judges

(Opinion filed: September 12, 2013)
_____

OPINION
_____

PER CURIAM

        The petitioners were previously before us when we denied their petition for review

of an adverse asylum, withholding of removal, and Convention Against Torture (CAT)

order of removal by the Board of Immigration Appeals (BIA).  See Perera v. Att'y Gen.,

447 F. App'x 365, 369 (3d Cir. 2011) (nonprecedential per curiam). In May 2012, almost two years after the BIA entered its order, the family filed a motion to reopen based on their fear of being persecuted or tortured in Sri Lanka for having sought asylum in the United States. They claimed to have become aware of the purported risk they faced in February 2012 when attempting to renew travel documents. See, e.g., Administrative Record (A.R.) 26–27, 142. Attached to the lengthy motion were more than a hundred pages of supporting exhibits. See A.R. 81–199.

The BIA examined this new evidence in a thorough opinion, concluding that the petitioners had failed to show that "these conditions did not exist before and at the time of their hearing, such that they represent changed conditions or circumstances since that time." A.R. 7.[1] More specifically, the submissions indicated that "the Sri Lankan government *continues* to use mistreatment, including torture, and the victims of torture include individuals who returned from abroad, which in turn *may* include returned asylum seekers." A.R. 8 (emphasis added). The motion to reopen was thus denied.

This timely, counseled petition for review followed. We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's denial of the motion to reopen, but our review is deferential; we will reverse only if the BIA abused its discretion, such that its decision was arbitrary, irrational, or contrary to law. Abulashvili v. Att'y Gen., 663 F.3d 197, 202

---

[1] The BIA also decided that the petitioners had not made a prima facie showing of their entitlement to relief, and separately declined to reopen sua sponte. See A.R. 11. The prima facie determination is not relevant to our analysis. Also, sua sponte relief has not been briefed and is thus not before us, Dwumaah v. Att'y Gen., 609 F.3d 586, 589 n.3 (3d Cir. 2010), but we would be without jurisdiction to review the discretionary decision in any event. See Desai v. Att'y Gen., 695 F.3d 267, 269 (3d Cir. 2012).

(3d Cir. 2011) (citations omitted).

Under the Immigration and Nationality Act, a single motion to reopen removal proceedings may be filed within 90 days of the entry of a final order of removal. 8 U.S.C. § 1229a(c)(7)(A), (C)(i); Desai, 695 F.3d at 269–70. Both the statute and the relevant regulations provide an exception for motions based on evidence of changed country conditions "arising in the country of nationality or the country to which removal has been ordered," but only "if [the] evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); accord 8 C.F.R. § 1003.2(c)(3)(ii). "Therefore, if the [alien] presents material evidence of changed country conditions that could not have been presented during the hearing before the IJ, his motion can be considered, even if there has been a prior motion to reopen or the motion is beyond the 90-day time limit for filing." Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007). A showing of changed country conditions is a threshold consideration to an analysis of the full merits of the motion to reopen. Id. at 312; see also Ni v. Holder, 715 F.3d 620, 624 (7th Cir. 2013); Khan v. Att'y Gen., 691 F.3d 488, 498 (3d Cir. 2012). "The burden of proof on a motion to reopen is on the alien to establish eligibility for the requested relief." Pllumi v. Att'y Gen., 642 F.3d 155, 161 (3d Cir. 2011) (citing 8 C.F.R. § 1003.2(c)).[2]

---

[2] The petitioners contend that Immigration & Naturalization Service v. Abudu, 485 U.S. 94 (1988), established that "the BIA may deny a Motion to Reopen based on changed country conditions on three grounds." Pet'rs' Br. 5. Although Abudu did construe the predecessor regulation to the one involved in this case, 8 C.F.R. § 3.2, it did not and could not have involved the changed-country-conditions exception to the time and number limits on motions to reopen, which were enacted after Abudu was decided. See, e.g., Pruidze v. Holder, 632 F.3d 234, 236

At the outset, the BIA did not abuse its discretion when it determined that the affidavit used by the Sri Lankan consulate to determine asylum status did not amount to a changed circumstance. Even assuming that the presence of the affidavit was in fact material to the petitioners' applications—a proposition that is by no means clear—the BIA was within its discretion to point out the lack of any indication that such an inquiry was, in fact, a change from the circumstances existing during the original asylum application process. The petitioners argue that the BIA asked them to "prove a negative" by showing that there was no such previous declaration, but the burden was theirs, and the lack of available evidence does not mean that the BIA's decision was either unfair or invalid. Cf. Moosa v. Holder, 644 F.3d 380, 386 (7th Cir. 2011) (discussing alien's ability to introduce current country reports and affidavits describing past conditions).[3]

The same analysis extends to the BIA's consideration of whether the new

(6th Cir. 2011); Hernandez-Rodriguez v. Pasquarell, 118 F.3d 1034, 1040–41 & n.8 (5th Cir. 1997). This failure to distinguish between the threshold requirement of demonstrating changed country conditions and the analysis pertinent to the merits of a motion to reopen is a common theme throughout the petitioners' briefs. See, e.g., Pet'rs' Br. 25–26 (relying upon standard in Guo v. Ashcroft, 386 F.3d 556, 560 (3d Cir. 2004), which dealt with a timely motion to reopen).

[3] Although it does not affect our decision today, we followed the instructions for obtaining the consular materials discussed in the BIA opinion cited on page eleven of the petitioners' opening brief. We were not able to find on the Sri Lankan consular website the exact affidavit that is presented by the petitioners, but we were able to access the passport application. Through the use of the Internet Archive's "Wayback Machine," which allows users to browse versions of pages and documents as they existed at various points in history, we were able to determine that questions pertaining to applications for asylum have been a longstanding feature of the "Repatriation" passport-application process. See, e.g., Appl. for a Sri Lankan Travel Doc. (May 7, 2006), http://web.archive.org/web/20060507034740/http://www.slembassyusa.org/consular/forms_repat riation/repatriation.pdf.

4

documents showed a changed risk of torture or mistreatment for returning asylum applicants as a category. As the agency made abundantly clear, conditions are far from ideal, and some returnees risk mistreatment—especially those affiliated with the LTTE (Liberation Tigers of Tamil Eelam). See A.R. 7. The BIA surveyed the evidence and saw no material change; and while the petitioners disagree with this assessment, they have not shown that the BIA's decision was infirm under our deferential standard of review.[4]

The petitioners also argue that the BIA's decision was irrational, because the agency inexplicably departed from prior cases presenting nearly identical facts. See, e.g., Pet'rs' Br. 21–22. To the extent that the petitioners rely on unpublished BIA decisions, "unpublished, single-member BIA decisions have no precedential value, do not bind the BIA, and therefore do not carry the force of law except as to those parties for whom the opinion is rendered." De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 350 (3d Cir. 2010). Furthermore, it appears that the BIA was adjudicating a *timely* motion to reopen in the case cited, as the agency explicitly held that, if considered as a motion for reconsideration, the petitioner's submission would have been untimely. See A.R. 177. Compare 8 C.F.R. § 1003.2(b)(2) (establishing a 30-day period for filing reconsideration

---

[4] The Government contends that the "changed circumstance" advanced by the petitioners is simply a change in personal circumstances (due to having applied for asylum) and could not support a motion to reopen in this context. As the Government acknowledges, the case it cites for that proposition, Anandarajah v. Att'y Gen., 352 F. App'x. 667, 672 (3d Cir. 2009) (per curiam), is nonprecedential and not binding. See 3d Cir. I.O.P. 5.7. But in any event, the petitioners claim that attitudes in Sri Lanka have changed towards failed asylum seekers; a change in personal circumstances that is accompanied by a change in country conditions could be a basis for reopening. Cf. Liu v. Att'y Gen., 555 F.3d 145, 151 (3d Cir. 2009) (citing Jin v. Mukasey, 538 F.3d 143, 147 (2d Cir. 2008)).

motions), with 8 C.F.R. § 1003.2(c)(2) (establishing a 90-day period for filing a motion to reopen). Even fact patterns that may be "nearly identical" can nonetheless lead to different outcomes in a markedly different procedural posture.

Finally, the petitioners assert that the BIA denied them due process by considering a document outside of the record without allowing them to respond to it. We agree with the Government that the petitioners have not shown substantial prejudice. See Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010). Also, the report in question was dated March 7, 2012; the petitioners' motion to reopen, by contrast, was dated May 7, 2012. See A. R. 80. This timing suggests that the petitioners could have been aware of the report by the time they submitted their motion, and they could have asked the BIA to reconsider its decision.

For the foregoing reasons, and because the petitioners' challenge to the BIA's decision is otherwise without merit, we conclude that the BIA did not abuse its discretion by denying the motion to reopen. We will deny the petition for review of the BIA's decision.